UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PATRICIA ADAMU,

                        Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-1936 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Patricia Adamu ("Plaintiff")[1] brings this action under 42 U.S.C. § 405(g) ("Section 405(g)") against the Commissioner of Social Security ("Commissioner"). Plaintiff seeks judicial review of the decision of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 16, 19.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

Plaintiff filed an application for DIB on February 1, 2019, claiming that she had been

---

[1] Plaintiff is also referred to in various documents as Patricia Amadu, Patricia Everett, Patricia Everett Soutar, and Patricia Ratcliff. (*See, e.g.*, Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings, Dkt. 17 ("Pl.'s Mem."); Tr. 184.) Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript, (*see* Dkt. 8), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

disabled since October 31, 2018.[2]  (Tr. 66, 74, 76.)  The claim was initially denied on April 1, 2019, and was denied upon reconsideration on July 10, 2019.  (Tr. 100, 112.)  After her claim was denied, Plaintiff requested a hearing on July 19, 2019, which was held before an administrative law judge ("ALJ") on February 13, 2020.  (Tr. 39–64, 124–25.)  By decision dated May 8, 2020, ALJ Martha Reeves found that Plaintiff was not disabled within the meaning of the Social Security Act, from the alleged onset of her disability on October 31, 2018, through the date of the ALJ's decision.  (Tr. 10–28.)  On July 28, 2020, Plaintiff requested a review of the ALJ's decision by the Appeals Council.  (Tr. 172.)  The Appeals Council denied the request for review on February 8, 2021.  (Tr. 1–6.)  Based upon this denial, on April 10, 2021, Plaintiff timely[3] filed this action seeking reversal or remand of the ALJ's decision.[4]

---

[2] Plaintiff's memorandum of law states that Plaintiff filed her application on February 4, 2019.  (Pl.'s Mem. at 3.)  This appears to be the date that Plaintiff was initially interviewed for DIB after filing her application.  (*See* Tr. 184.)

[3] Section 405(g) provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)).  Here, the Commissioner's decision became final when the Appeals Council denied review on February 8, 2021, and therefore Plaintiff presumably received the decision by February 13, 2021.  (*See* Compl., Dkt. 1, at ¶ 7.)  Because the Complaint was filed on April 10, 2021—i.e., 56 days after Plaintiff presumably received the Appeals Council's decision—this action is timely.

[4] This matter was reassigned to the undersigned on February 5, 2024.

**DISCUSSION**

A district court reviewing a final decision of the Commissioner must determine whether the "correct legal standard[s]" were applied and whether there is "substantial evidence in the record" to support the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam); *see* 42 U.S.C. § 405(g). "[T]he ALJ generally has an affirmative obligation to develop the administrative record." *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). An ALJ's failure to develop the record adequately is a basis to vacate the decision. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009). As for determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quotation omitted). However, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

An ALJ applies a five-step inquiry to evaluate Social Security disability claims. *See Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted) (explaining that plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step). Here, at steps one and two, the ALJ found that Plaintiff had not performed substantial gainful activity since her alleged onset date and had the severe impairments of "degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, bilateral carpal tunnel syndrome, and obesity." (Tr. 12–13.) At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P, and that Plaintiff had the residual functional capacity ("RFC") to perform

3

"medium work . . . except that she can frequently handle and finger bilaterally." (Tr. 13–21.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a file clerk. (Tr. 21–22.) Accordingly, at step five, the ALJ concluded that Plaintiff was not disabled. (Tr. 22.)

In reaching this conclusion, the ALJ erred in several ways. First, although Plaintiff does not challenge the sufficiency of the record, the Court finds that the ALJ erred by failing to adequately develop the record to obtain medical source opinions from Plaintiff's treating physicians: Dr. Ulrike Kaunzner and Dr. Dina Gad.[5] (*Compare* Mem. of Law in Supp. of Def.'s Cross-Mot. for J. on the Pleadings, Dkt. 19-1 at 3–4 (noting treatment by Dr. Kaunzner and Dr. Gad), *with* Tr. 10–22 (failing to mention either doctor in ALJ's decision).) An ALJ is required to make "every reasonable effort" to obtain from an individual's treating physicians all medical evidence necessary to properly make a disability determination, for "at least the 12 months preceding the month in which a claim is filed." *See Starr v. Comm'r of Soc. Sec.*, 581 F. Supp. 3d 525, 533 (S.D.N.Y. 2022). "Although the treating physician rule has been abolished, [this] principle . . . still applies: whether remand is required because of failure to obtain an opinion from the claimant's treating physician depends on whether the ALJ could have reached an informed decision based on substantial evidence without it." *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 18–19, 31 (S.D.N.Y. 2022) (vacating Commissioner's decision for failure to develop the record where ALJ did not seek a medical source statement from plaintiff's treating physician). Here, the evidence that the ALJ obtained reflects that Plaintiff was seen by Dr. Kaunzner and Dr. Gad during

---

[5] It appears that Plaintiff was also seen by Dr. Joshua Weaver, but the extent to which Dr. Weaver treated Plaintiff, as opposed to merely examining her at the request of one of her regular treating physicians, is unclear. (*Compare* Tr. 340 (stating that Dr. Kaunzner referred Plaintiff for an exam with Dr. Weaver that showed "electrophysiologic evidence of . . . bilateral (moderately severe on right, mild on left) carpal tunnel syndrome"), *with* Tr. 512 (noting Plaintiff's referral to physical and occupational therapy by "neurolog[ist] – Dr. Weaver"); *see also* Pl.'s Mem. at 6, 9 (noting that Dr. Weaver "examined" Plaintiff).)

4

the 12 months before Plaintiff filed her claim on February 1, 2019, for issues relevant to Plaintiff's claimed disabilities. (*See, e.g.*, Tr. 443–44 (March 29, 2018 progress notes from Dr. Gad stating that Plaintiff's "right hand has been throbbing during the day as well as disrupting sleep"); Tr. 439–40 (April 11, 2018 progress notes from Dr. Kaunzner stating that Plaintiff "describes some weakness with her grip, particularly prominent when she tries to wash dishes," and that she "[u]ses a brace when working"); Tr. 436 (June 1, 2018 progress notes from Dr. Kaunzner stating that Plaintiff "[r]eports continue[d] numbness and pain in her right hand, especially at night"); Tr. 433 (August 7, 2018 progress notes from Dr. Gad stating that Plaintiff "[h]as had bilateral carpal tunnel since around 2013" that "caus[es] pain, weakness, [and] numbness in both hands").)

Although the ALJ obtained treatment notes from these physicians, "[m]edical opinions are more than mere treatment notes." *Brown v. Comm'r of Soc. Sec.*, No. 20-CV-5959 (KAM), 2023 WL 8828653, at *5 (E.D.N.Y. Dec. 21, 2023). "In order to constitute a medical opinion . . . , a medical practitioner's statements must 'explicitly assess [the] claimant's limitations and RFC.'" *Id.* (quoting *Reginald R. v. Comm'r of Soc. Sec.*, No. 21-CV-6326 (CJS), 2023 WL 5608869, at *10 (W.D.N.Y. Aug. 30, 2023)). The treatment notes from Dr. Kaunzner and Dr. Gad "do not provide sufficient insight into Plaintiff's abilities or restrictions regarding her functional limitations or capacity to work," and remand is warranted to further develop the record accordingly. *See Brown*, 2023 WL 8828653, at *5; *see also Ayala*, 620 F. Supp. 3d at 35–36 ("Under the new [post-2017] regulations, courts often find that an informed decision could not be reached where an ALJ failed to obtain opinion evidence from the plaintiff's long-term treating physicians[.]" (citing *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *11 (S.D.N.Y. Jan. 29, 2021) (stating that ALJ's duty to develop the record "takes on heightened importance with respect to a claimant's treating medical sources, because those

5

sources 'are likely to be the medical professional[s] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from . . . reports of individual examinations"))); *Peters v. Comm'r of Soc. Sec.*, No. 18-CV-6101 (JWF), 2019 WL 2719696, at \*4 (W.D.N.Y. June 28, 2019); *Smith v. Astrue*, No. 05-CV-1433 (NAM), 2008 WL 4517810, at \*7 (N.D.N.Y. Sept. 30, 2008) ("[T]he ALJ has an affirmative obligation to obtain more than 'sparse notes' in the medical records from a treating physician.").

Second, the Court finds that the ALJ's RFC was not supported by substantial evidence. Because of the gaps in the record regarding Plaintiff's treating physicians, the only functional assessments that the ALJ found to be even "somewhat persuasive" were completed by a single consultative examiner and several non-examining opinion sources—who did not have the benefit of reviewing all of the evidence that was in the record before the ALJ. (*See* Tr. 19–20 (referring to opinions of consultative examiner Dr. Allen Meisel and non-examining experts Dr. S. Putcha, Dr. S. Padmaraju, and Dr. Leonard Simpson[6] as "somewhat persuasive").) In general, an ALJ should not rely heavily on the findings of a single consultative physician and non-examining physicians. *See Ting v. Comm'r of Soc. Sec.*, No. 23-CV-1241 (PKC), 2024 WL 815841, at \*8 (E.D.N.Y. Feb. 27, 2024) ("[T]he ALJ's reliance on the single examination done by [a consultative examiner] and the non-examining reports of [two doctors] do not constitute substantial evidence in this case[.]"); *Jesse M. v. Comm'r of Soc. Sec.*, No. 22-CV-6044 (GRJ), 2023 WL 5013302, at \*11 (S.D.N.Y. Aug. 7, 2023) ("The Second Circuit has long cautioned that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" (quoting *Selian*,

---

[6] The Court notes that the ALJ refers to the opinion of "[Joselito] Luna and [Dr. Simpson]," (Tr. 20), but for simplicity, the Court refers to that document as the opinion of Dr. Simpson, (*see* Tr. 85–95).

6

708 F.3d at 419)). Furthermore, the "Second Circuit has found remand appropriate when an ALJ relies on a non-examining medical expert to override the opinions of treating physicians and the non-examining medical expert does not consider the entirety of the Plaintiff's medical records." *Murphy v. Berryhill*, No. 17-CV-916 (JMA), 2019 WL 1075605, at *7 (E.D.N.Y. Mar. 7, 2019) (citing *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (summary order)).

Although Drs. Putcha, Padmaraju, and Simpson were able to review the records as of the dates that they prepared their reports—in March 2019, June 2019, and July 2019, respectively—additional relevant evidence came into the record after each of those reviews, such as progress notes from Dr. Katherine Victoria Yao indicating, on November 22, 2019, that Plaintiff had "[l]imited modalities" and referring Plaintiff to physical therapy so that she could "[p]rogress to functional activities." (*See* Tr. 722; *see also* Tr. 869, 873 (notes from October 17, 2019 occupational therapy evaluation by Chou-Hsien Lin noting Plaintiff's "worsening symptoms of carpal tunnel" and "performance skill deficits in fine motor coordination, muscle weakness, pain management and strength").) Especially given the absence of an opinion from Dr. Kaunzner or Dr. Gad, the "somewhat persuasive" opinions of Dr. Meisel and non-examining physicians Drs. Putcha, Padmaraju, and Simpson—which were incomplete in comparison to the evidence before the ALJ—cannot constitute substantial evidence in this case, and warrant remand for further consideration of the full record.[7] *See Ting*, 2024 WL 815841, at *8; *Murphy*, 2019 WL 1075605, at *7.

---

[7] The ALJ found that the opinions of Plaintiff's prior treating physicians, Dr. George Unis and Dr. Gideon Hedyrich, were not persuasive because they were rendered years before the onset of Plaintiff's claimed disabilities. (*See* Tr. 21.) "[A] medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). The Court notes that, upon remand, the opinions of Dr.

Third, the Court finds that the ALJ's RFC was not supported by substantial evidence because the ALJ's evaluation of what opinion evidence *was* in the record was conclusory. An ALJ must explain "how persuasive [she] find[s] all of the medical opinions . . . in [an applicant's] case record." 20 C.F.R. § 404.1520c(b). "Supportability" and "consistency" are the "most important factors" in evaluating the persuasiveness of medical opinions. *Id.* § 404.1520c(b)(2). Here, the ALJ simply stated that the opinions of Drs. Putcha, Padmaraju, and Simpson that Plaintiff could engage in a "medium level of exertion" were "consistent with the record." (Tr. 20.) However, "[s]uch conclusory statements offer no insight into 'how well [the doctors] supported and explained their opinion[s],' and are insufficient to withstand review." *Ayala*, 620 F. Supp. 3d at 31 (citation omitted) (quoting *Vellone v. Saul*, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)) (collecting cases). Furthermore, the ALJ's conclusion is inconsistent with at least some evidence in the record indicating that Plaintiff could not engage in "medium" exertion, i.e., lift up to 50 pounds. (*See* Tr. 825–26 (noting Plaintiff's referral by Dr. Gad to occupational therapy, with the short-term goal of "improv[ing] right gross grasp strength to 30 Lbs," implying that Plaintiff could not at that time grasp, let alone lift, 30 pounds).)

Fourth, in evaluating whether Plaintiff could return to her past work, the ALJ did not consider the possibility that Plaintiff's past work was a composite job. (*See* Pl.'s Mem. at 13–14.) The ALJ relied on testimony from the vocational expert who "classified [Plaintiff's] work as that of a file clerk II." (Tr. 21.) However, Plaintiff testified at the ALJ hearing that she also "would [engage in] data entry," raising the possibility that her job contained responsibilities beyond that of a file clerk, i.e., that her job was a composite of a file clerk and a data entry clerk. (*See* Tr. 47;

---

Unis and Dr. Hedyrich might need to be considered more strongly to the extent that they are "consistent with the record as a whole notwithstanding [their] age." *See id.*

8

Pl.'s Mem. at 12–13.)  This difference is potentially material, as work as a file clerk requires only "frequent" fingering, whereas work as a data entry clerk requires "constant" fingering, and, here, the ALJ found that Plaintiff could only engage in "frequent . . . fingering."  (Tr. 21); *see also* DICOT 206.367-014 (describing job of "File Clerk II"); DICOT 203.582-054 (describing job of "Data Entry Clerk").  Thus, "[c]ourts in this Circuit have routinely remanded where the '[p]laintiff's testimony, at the very least, created a possibility that her past work was a composite job' yet 'both the VE and the ALJ ignored any possibility in their analysis that the past relevant work was a composite job.'"  *Verna M. v. Kijakazi*, No. 21-CV-1590 (MPS) (RMS), 2022 WL 17251764, at *15 (D. Conn. Nov. 28, 2022) (quoting *Cheryl A. v. Comm'r of Soc. Sec.*, No. 20-CV-1649, 2022 WL 1665159, at *4 (W.D.N.Y. May 25, 2022) (collecting cases)).  Remand is therefore warranted to consider the possibility that Plaintiff's position was a composite job that required her to finger constantly, as opposed to only frequently.

   Finally, at one point, the ALJ impermissibly substituted her own judgment for that of a medical expert.  An ALJ may not "arbitrar[ily] and impermissibl[y] attempt to substitute [her] lay opinion for competent medical opinion, because the ALJ is not a medical expert who is competent to: (a) opine on what, if any, . . . treatment or therapy is warranted under the circumstances; or (b) interpret medical evidence or the lack thereof under the circumstances."  *Santiago v. Comm'r of Soc. Sec.*, No. 19-CV-4001 (KPF) (KNF), 2020 WL 6530884, at *6 (S.D.N.Y. May 5, 2020).  When assessing Plaintiff's RFC, the ALJ opined, without support, that "[i]f the claimant experienced the debilitating degree of functional limitation described at the hearing, such that she had to lie down for most of the day, one would expect to see further attempts at treatment, including medication, and compliance with physical therapy for her back after December 2019."  (Tr. 19.)  This opinion—without any citation to a medical opinion or evidence of what "would [be]

9

expect[ed]" with respect to "further attempts at treatment"—was improper and warrants remand. *See Selian*, 708 F.3d at 419 (remanding where "the ALJ improperly substituted her own criteria as to what is necessary to establish a . . . diagnosis without support from medical testimony").

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 25, 2024
       Brooklyn, New York

10