UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PATRICIA ADAMU,

Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-1936 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Patricia Adamu filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $77,057.00 in past-due benefits. Plaintiff's counsel, Christopher James Bowes, now moves for $19,264.25 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Bowes's motion is granted, and Plaintiff's counsel is awarded $19,264.25.

## BACKGROUND

After representing Plaintiff before the SSA, Louis R. Burko filed this action on April 10, 2021. (Compl., Dkt. 1.) On November 23, 2021, Bowes entered an appearance on Plaintiff's behalf, as co-counsel to Burko. (Notice of Appearance, Dkt. 9.)[1] After the parties filed cross-motions for judgment on the pleadings, and Plaintiff filed a reply, the Court granted Plaintiff's

[1] Burko does not appear to have handled the briefing on appeal. (*See* Pl.'s Mem. Supp. Att'y's Fees, Dkt. 27, at 3 (referring to Burko as "administrative counsel"); Decl. of Christopher James Bowes in Supp. of Mot. for Att'y's Fees ("Bowes Decl."), Dkt. 28, ¶ 17 (same); *see also* Bowes Decl. Ex. A ("Invoice"), Dkt. 28, at ECF 13).) Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

motion and remanded to the SSA. (*See* Memorandum and Order ("M&O"), Dkt. 22.) The Court then awarded Plaintiff $6,515.56 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (07/19/2024 Dkt. Order.) On March 5, 2025, the SSA mailed Plaintiff a Notice of Award informing her that she would receive approximately $77,057.00 in past-due benefits, with 25% ($19,264.25) withheld as possible fees for her attorney. (Bowes Decl. Ex. C ("Notice of Award"), Dkt. 28, at ECF 17–21.[2]) Bowes submits in his declaration that he did not receive the Notice of Award from Burko until September 24, 2025. (Bowes Decl., Dkt. 28, ¶ 17.)

Bowes filed this motion on October 10, 2025, seeking $19,264.25. (*See* Mot. for Att'y's Fees, Dkt. 27.) Along with the motion, Bowes submitted a fee agreement, demonstrating that Plaintiff retained Bowes on a 25% contingency-fee basis, and itemized time records, indicating that Bowes spent a total of 28.7 hours litigating this matter before this Court. (Retainer Agreement, Dkt. 31-1; Invoice, Dkt. 28, at ECF 13.) $19,264.25 for 28.7 hours of work would be an effective hourly rate of $671.23 per hour. The Commissioner of Social Security ("Commissioner") does not object to this motion. (Def.'s Resp. Mot. for Att'y's Fees ("Resp."), Dkt. 30, at 1.)

[2] Although the Notice of Award elsewhere states that "25 percent of past-due benefits [was] $9200.00," (Notice of Award, Dkt. 28, at ECF 18), the Commissioner of Social Security has confirmed that it had "withheld $19,264.25 from Plaintiff's past due benefits to pay a possible attorney fee request," (Def.'s Resp. Mot. for Att'y's Fees, Dkt. 30, at 1.) "The Court defers to the SSA to resolve any uncertainties relating to the 25% cap that counsel is entitled to request." *Vargas v. Comm'r of Soc. Sec.*, No. 20-CV-4363 (PKC), 2026 WL 575400, at *2 (E.D.N.Y. Mar. 2, 2026). The Court therefore finds that $19,264.25 is the statutory maximum that Plaintiff's counsel is entitled to request and proceeds to test this fee for reasonableness.

## DISCUSSION

### I. Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) of the Social Security Act ("Section 406(b)") must be filed within the 14-day filing period prescribed by Federal Rule of Civil Procedure ("Rule") 54(d). *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days after mailing." *Id.* at 87–89 & n.5. Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

The Notice of Award letter was issued on March 5, 2025, (Notice of Award, Dkt. 28, at ECF 17), and the present motion was filed on October 8, 2025, (Dkt. 27)—over seven months after the Notice was issued. Bowes claims that he did not receive the Notice of Award until September 24, 2025, when it was (belatedly) forwarded to him by Plaintiff's prior administrative counsel. (Bowes Decl., Dkt. 28, ¶ 17.) This Court and others have concluded that the 14-day period starts "when counsel receives notice of the benefit award . . . because until counsel receives notice of the award, the amount of the award remains 'as-yet-unknown' to the relevant party filing the [Section] 406(b) motion." *Hanlon v. Comm'r of Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at *1 (E.D.N.Y. Jan. 11, 2022) (quoting *Williams v. Comm'r of Soc. Sec.*, No. 18-CV-4734 (PKC), 2021 WL 4480536, at *2 (E.D.N.Y. Sep. 30, 2021) (collecting cases)). Starting the clock when a plaintiff or a prior counsel receives notice would otherwise seem inequitable, "depriving [current] counsel of fees to which they are entitled through no fault of their own, and creating a perverse incentive for plaintiffs to conceal that they had received notice of benefits in

order to avoid paying their attorneys and thereby keep the entirety of their awards for themselves." *See id.*

Accordingly, the Court calculates the 14-day filing period from the date Bowes received the Notice of Award from Plaintiff's prior counsel. Bowes received the Notice on September 24, 2025, (Bowes Decl., Dkt. 28, ¶ 17), and filed the present motion on October 8, 2025, 14 days later, (Dkt. 27). Bowes's motion is thus timely filed.

## I. Reasonableness of the Requested Fee

### A. Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness only. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) "the character of the representation and the results the representative achieved"; (2) "whether a claimant's counsel is responsible for undue delay," unjustly allowing counsel to obtain a percentage of additional past-due benefits;[3] and (3) whether the requested amount is so "large in comparison to the time that counsel spent on the case" as to be a "windfall" to the attorney. *Id.* at 849, 853 (citations omitted).

[3] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (internal quotation marks and citations omitted)).

The windfall factor is not equivalent to the traditional lodestar inquiry, where the Court is called on to act as an arbiter of "'reasonableness' between the 'opposing interests of the prevailing plaintiffs and losing defendants.'" *Id.* at 853 (quoting *Wells v. Sullivan*, 907 F.2d 371 (2d Cir. 1990)). Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* at 854 (citation omitted). Courts will also consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under [Section] 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-0548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)) (same).

**B. Application**

Here, Plaintiff retained Mr. Bowes pursuant to a 25% contingency fee agreement. (Retainer Agreement, Dkt. 31-1.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Bowes seeks the full 25% of Plaintiff's past-due benefits. At 28.7 hours of work, that would be an effective hourly rate of $671.23 per hour. For the reasons explained below, the Court does not find that amount to be unreasonable in the context of this case.

To determine reasonableness, the Court considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. In the opening brief, Bowes argued that the Administrative Law Judge ("ALJ") had made a determination about Plaintiff's residual functional capacity that was inconsistent with the evidence of record. (Pl.'s Mem. Supp. Mot. for J. on the Pleadings ("Pl.'s Mem."), Dkt. 17, at 9.) Bowes's briefing was effective, identifying the relevant infirmities upon which the Court granted Plaintiff's motion for judgment on the pleadings and remanded this action for further administrative proceedings. (*Compare id.*, *with* M&O, Dkt. 22.[4]) Plaintiff then received an award of past-due and future benefits on remand. (Bowes Decl., Dkt. 28, ¶ 15.) Thus, this factor does not justify a downward adjustment. *See*

[4] For example, Bowes argued that, contrary to the determination of the ALJ, Plaintiff "[l]acks the [r]esidual [f]unctional [c]apacity for [m]edium [w]ork." (Pl.'s Mem., Dkt. 17, at 9.) The Court subsequently found that there was "at least some evidence in the record indicating that Plaintiff could not engage in [work requiring] 'medium' exertion." (M&O, Dkt. 22, at 8.) Specifically, Bowes argued that the ALJ, in making its determination, relied too heavily on the reports of consultative and non-examining physicians rather than the opinions of Plaintiff's treating physicians. (Pl.'s Mem., Dkt. 17, at 10–11.) The Court agreed, noting that this deficiency "warrant[ed] remand for further consideration of the full record." (M&O, Dkt. 22, at 6–7.) Bowes also argued that even if Plaintiff retained the residual functional capacity for medium work, the ALJ had erred in deciding that Plaintiff could return to her past relevant work. (Pl.'s Mem., Dkt. 17, at 11–14.) Bowes maintained that in deciding that Plaintiff could return to her prior job, the ALJ had overlooked that Plaintiff's "past work encompassed two separate jobs, a file clerk and data entry clerk." (*Id.* at 13.) The Court agreed that "the ALJ did not consider the possibility that Plaintiff's past work was a composite job." (M&O, Dkt. 22, at 8.) The Court accordingly held that this issue was "potentially material" and another factor warranting remand. (*Id.* at 9.)

*McEneaney v. Comm'r of Soc. Sec.*, No. 21-CV-10370 (LGS) (SLC), 2023 WL 9796621, at *3 (S.D.N.Y. Nov. 17, 2023) (reaching the same conclusion where counsel's advocacy prompted the Commissioner to agree to a remand, which in turn granted a plaintiff past due benefits), *report and recommendation adopted*, 2024 WL 815984 (S.D.N.Y. Feb. 27, 2024).

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. Here, Bowes was not responsible for unreasonable delays that would warrant a downward adjustment. Before Bowes entered his appearance on Plaintiff's behalf, Plaintiff failed to file a motion for judgment on the pleadings by the deadline of October 11, 2021. (10/25/2021 Dkt. Order.) After noticing his appearance for Plaintiff, Bowes then moved for an additional extension of time "to permit [him] to properly present this case," to which opposing counsel consented. (Dkt. 10.) The Court granted a 14-day extension. (*See* 11/29/2021 Dkt. Order.) Bowes made no other requests for extensions. The other delays are attributable to the Commissioner, who, on one occasion, failed to comply with a deadline set by this Court, (*see* 07/15/2021 Dkt. Order), and moved for two extensions, (Dkts. 13, 14). Therefore, this factor also does not justify a downward adjustment. *See, e.g.*, *Vargas v. Comm'r of Soc. Sec.*, No. 20-CV-4363 (PKC), 2026 WL 575400, at *3 (E.D.N.Y. Mar. 2, 2026) (finding that a single request for an extension lasting 21 days did not warrant a downward adjustment) (citing *Gray v. Comm'r of Soc. Sec.*, No. 20-CV-3916 (PKC), 2023 WL 3948796, at *3 (E.D.N.Y. June 12, 2023); *Sestito v. Comm'r of Soc. Sec.*, No. 20-CV-3538 (PKC), 2022 WL 14760733, at *3 (E.D.N.Y. Oct. 25, 2022)).

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56. First, with respect to "the

ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court believes that 28.7 hours was a reasonable amount of time to spend in this matter. In *Fields*, the Second Circuit found that 25.8 hours counsel spent reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a de facto hourly rate of $1,556.98. *Id.* Here, the transcript was 1224 pages, (Admin. Tr., Dkt. 8), the opening brief was 22 pages, (Pl.'s Mem., Dkt. 17), and Plaintiff's counsel was also required to draft a reply brief, (Pl.'s Reply, Dkt. 18). With a longer transcript to review, a longer brief drafted, and an additional filing to draft and submit, the amount of work expended here is greater than that in *Fields*, while the hourly rate at issue is only $671.23, less than half of the hourly rate that the Circuit found justified in *Fields*. Moreover, like the attorneys in *Fields*, Bowes is an experienced lawyer who specializes in Social Security disability cases. (*See* Bowes Decl., Dkt. 28, ¶¶ 32–33.) The Court therefore finds that Bowes accomplished "in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *See Fields*, 24 F.4th at 854.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *id.* at 855, the Court notes that Bowes did not represent Plaintiff in front of the SSA before filing this suit. In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before ALJs and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See id.* Because Bowes did not represent Plaintiff from the start of her agency proceedings, (*see* Bowes Decl., Dkt. 28, ¶ 10), he did not

develop the sort of attorney-client relationship built over multiple rounds of representation that plaintiff's counsel had developed in *Fields*. Nevertheless, he achieved comparable results to those secured by plaintiff's counsel in *Fields* in a comparable amount of time, while facing a slightly more voluminous record. This factor, therefore, does not warrant any downward adjustment.

Third, with respect to "the satisfaction of the disabled claimant," the Court presumes that Plaintiff is satisfied with the results, with no evidence to the contrary. *Gray*, 2023 WL 3948796, at *4. Moreover, the Court finds that Bowes achieved a desirable result for Plaintiff—benefits for the vast majority of her alleged disability period. (*See* Bowes Decl., Dkt. 28, ¶¶ 4, 16). This factor, therefore, does not justify a downward adjustment.

Lastly, the Court addresses "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Fields*, 24 F.4th at 855. Here, as in *Fields*, "[t]he success of the claim was far from a sure thing, as evidenced by the fact that it was denied multiple times at the agency level." *See id.* at 856; (Bowes Decl., Dkt. 28, ¶¶ 5, 7–8). And "advancing the claim in the district court was not without effort," *Fields*, 24 F.4th at 856, as the parties fully briefed cross-motions for judgment on the pleadings, and did not stipulate to remand. "A windfall is more likely to be present in a case, unlike this one, where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of nonrecovery." *Id.* This final factor, therefore, also does not justify a downward adjustment.

For the reasons explained above, the Court finds the requested amount of $19,264.25 to be reasonable. Additionally, upon receiving the Section 406(b) award, Bowes must remit the $6,515.56 received pursuant to the EAJA to Plaintiff.

**CONCLUSION**

For the reasons explained above, the pending motion for attorney's fees under Section 406(b) is granted, and Bowes is awarded $19,264.25. Upon receipt of this award from the government, Bowes shall promptly refund Plaintiff $6,515.56, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 24, 2026
Brooklyn, New York